UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MOHAMAD AB-RAHIM,

      Petitioner,

v.

TAMMY MARICH, in her official
capacity as Field Office Director, Buffalo
Field Office, U.S. Immigration and
Customs Enforcement, et al.,

      Respondents.

**DECISION AND ORDER**

6:26-CV-06005-EAW

---

Petitioner Mohamad Ab-Rahim ("Petitioner") is a civil immigration detainee alleging that he is being detained in United States Immigration and Customs Enforcement custody pending removal proceedings in violation of the United States Constitution. (Dkt. 1). He seeks relief under 28 U.S.C. § 2241. (*Id*). Petitioner is being held at the Buffalo Federal Detention Facility in Batavia, New York. (*Id.* at ¶ 5).

Petitioner is 33 years old, and a native of Afghanistan who entered the United States at the southern border without inspection on or about January 23, 2023. (*Id.* at ¶¶ 8, 15). Petitioner was encountered within 100 miles of the border and 14 days of entry (Dkt. 8 at 2), placed into full removal proceedings after demonstrating a credible fear of persecution or torture, and was released with a Notice to Appear in Immigration Court on April 24, 2023 (Dkt. 1 at ¶¶ 16-18). On January 19, 2024, Petitioner submitted his application for

- 1 -

asylum and withholding of removal to the Executive Office for Immigration Review, and shortly thereafter a hearing was scheduled for February 2, 2026.  (*Id*. at ¶¶ 19-20).  The government contends that Petitioner is an arriving alien subject to expedited removal under 8 U.S.C. § 1225(b)(1), who was released on a one-year parole on March 23, 2023.  (Dkt. 4).  But the Notice to Appear attached to the petition does not designate Petitioner as an arriving alien, and instead states that Petitioner is "an alien present in the United States who has not been admitted or paroled."  (Dkt. 1-2 at 1).

On December 2, 2025, Petitioner was taken into custody outside his home and he remains detains without bond or any bond hearing.  (Dkt. 1 at ¶¶ 21-23).  Petitioner has no criminal history (*id*. at ¶ 24), and instead has been residing in the United States for over three years with parole that expired almost two years ago, and with a pending asylum application.

Petitioner filed the present petition on January 2, 2026.  (Dkt. 1).  Within days, the Court issued a text order requiring the government to explain how this case could be distinguished from the undersigned's prior decisions finding that noncitizens who are present in the United States without having been admitted or paroled, are subject to detention under 8 U.S.C. § 1226, and not § 1225(b)(2).  (Dkt. 2).  The government responded that this case did not arise under the *Hurtado* framework[1] and instead Petitioner

---

[1]   As the undersigned explained in *Quituizaca v. Bondi*, No. 6:25-CV-6527-EAW, 2025 WL 3264440, at *3 (W.D.N.Y. Nov. 24, 2025), a policy directive issued under the current executive administration led to a decision from the Board of Immigration Appeals on September 5, 2025, in *Matter of Jonathan Javier Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA), 2025 WL 2674169 (Sept. 5, 2025), which held that immigration judges lack authority to hear bond requests of noncitizens present in the United States without

was an arriving alien subject to expedited removal under 8 U.S.C. § 1225(b)(1).  (Dkt. 4).  Petitioner filed a reply, claiming incorrectly that a case decided by another district judge in this District was "binding" on the undersigned.  (Dkt. 6).

The government responded on January 8, 2026, contending among other things that the facts in *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) "essentially mirror those here" (Dkt. 8 at 2),[2] but that also is not correct.  *Thuraissigiam* involved a habeas petition commenced by a noncitizen challenging the determination that he did not possess a credible fear.  *Id*. at 114-15.  The Supreme Court reversed the Ninth Circuit's determination that 8 U.S.C. § 1252(e)(2) (limiting the scope of habeas corpus proceedings for determinations made under 8 U.S.C. § 1225(b)(1)) violated the Suspension Clause.  *Id*. at 115-16.  The Supreme Court also disagreed with the argument that the petitioner, who had been stopped after making it 25 yards into the country before he was apprehended, had due process rights outside the statutory rights provided under the law.  *Id*. at 138-140.  In so holding, the Supreme Court reaffirmed its holding in *Shaughnessy v. United States ex rel. Mezei*, that "aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law. . . .  But an alien on the threshold of initial entry stands

---

inspection and admission because those individuals were classified under 8 U.S.C. § 1225(b)(2) and thus subject to mandatory detention.  Like almost all courts to have considered the issue, the undersigned has rejected *Hurtado*.

[2]     Petitioner filed a response to this submission from the government on January 9, 2026, but that response failed to address the government's argument regarding *Thuraissigiam*.  (*See* Dkt. 9).

on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" 345 U.S. 206, 208 (1953).  As reiterated by the Supreme Court in *Thuraissigiam,* "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'"  591 U.S. at 139.

But in *Thuraissigiam*, the petitioner was never released from custody into the United States, on parole or otherwise.  And as the undersigned recently concluded "where a petitioner's re-arrest was <u>not</u> a continuation of the initial border encounter, but an independent decision to detain the individual after the expiration of his parole, the detention pursuant to that re-arrest arises under [8 U.S.C.] § 1226."  *Ivonin v. Rhoney*, No. 6:25-CV-06673 EAW, 2026 WL 199283, at *4 (W.D.N.Y. Jan. 26, 2026).

Because of the undersigned's decision in *Ivonin*, the undersigned issued text orders allowing further briefing.  (Dkt. 10; Dkt. 12; Dkt. 14).  The government filed a letter in response on January 28, 2026,[3] attempting to distinguish *Ivonin* from this case because Petitioner surreptitiously unlawfully entered the country, whereas the petitioner in *Ivonin* followed the lawful process of appearing at a port of entry and obtaining parole.  (Dkt. 11).  But the government has not cited any legal authority in support of its position, and it does not appear supported by the law.  *See*, *e.g.*, *Thuraissigiam*, 591 U.S. at 108 ("An alien who arrives at a 'port of entry,' *i.e.*, a place where an alien may lawfully enter, must apply for admission. An alien like respondent who is caught trying to enter at some other spot *is*

---

[3]     Petitioner filed a reply on January 28, 2026.  (Dkt. 13).

*treated the same way.*" (citing 8 U.S.C. § 1225(a)(1), (3) (emphasis added)).  In other words, regardless of how a noncitizen presents at or near the border and requests asylum, the statutory framework is the same once they pass a credible fear interview and are granted parole.

Accordingly, for the same reasons the Court has previously articulated in *Ivonin*, the petition is granted to the extent that Petitioner seeks a bond hearing, and a bond hearing shall be conducted in accordance with the following terms:

1. Petitioner shall be granted a bond hearing before an immigration judge ("IJ") on or before February 10, 2026.  If Petitioner requests a continuance that results in a bond hearing date outside this deadline, such a continuance will comply with this Order as long as the new date falls within a reasonable time period.

2. After considering the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court concludes that the government shall have the burden to demonstrate dangerousness or flight risk by clear and convincing evidence.  *See Lieogo v. Freden*, No. 6:25-CV-06615 EAW, 2025 WL 3290694, at *4-6 (W.D.N.Y. Nov. 26, 2025). In deciding whether the government has met its burden of proof, the IJ must consider whether less-restrictive alternatives to detention can reasonably address the government's interest in Petitioner's continued detention.

3. If the IJ finds that the government has not met its burden, then in setting any bond the IJ must consider Petitioner's ability to pay and alternative conditions of release.

4. Thus, in order to continue Petitioner's detention after any bond hearing, the IJ must find by clear and convincing evidence and make findings that no condition or

- 6 -

combination of conditions of release can reasonably ensure Petitioner's appearance and the safety of the community—that is, even with conditions, Petitioner presents an identified and articulable risk of flight or a threat to another person or the community.

5. Respondents are directed to file a status update with the Court <u>on or before February 12, 2026</u>.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   February 3, 2026
         Rochester, New York